*PRELIMINARY PRINT*

VOLUME 599 U. S. PART 1
PAGES 453–464

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

JUNE 16, 2023

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

## LORA *v.* UNITED STATES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE SECOND CIRCUIT

No. 22–49.   Argued March 28, 2023—Decided June 16, 2023

A federal court imposing multiple prison sentences typically has discretion
to run the sentences concurrently or consecutively.   See 18 U. S. C.
§ 3584.   An exception exists in § 924(c), which provides that "no term of
imprisonment imposed on a person under this subsection shall
run concurrently with any other term of imprisonment."   § 924(c)
(1)(D)(ii).   Here, the Court considers whether § 924(c)'s bar on concur-
rent sentences extends to a sentence imposed under a different subsec-
tion, § 924(j).

   Petitioner Efrain Lora was convicted of the federal crime of aiding
and abetting a violation of § 924(j)(1), which penalizes "a person who, in
the course of a violation of subsection (c), causes the death of a person
through the use of a firearm," where "the killing is a murder."   A viola-
tion of subsection (c) occurs when a person "uses or carries a firearm"
"during and in relation to any crime of violence or drug trafficking
crime," or "possesses a firearm" "in furtherance of any such crime."
§ 924(c)(1)(A).   Lora was also convicted of a second federal crime, con-
spiring to distribute drugs.

   At sentencing, the District Court concluded that it lacked discretion
to run the sentences for Lora's two convictions concurrently, because
§ 924(c)(1)(D)(ii)'s bar on concurrent sentences governs § 924(j) sen-
tences.   The District Court sentenced Lora to consecutive terms of im-
prisonment for the drug-distribution-conspiracy count and the § 924(j)
count.   The Court of Appeals affirmed.

*Held*: Section 924(c)(1)(D)(ii)'s bar on concurrent sentences does not govern
a sentence for a § 924(j) conviction.   A § 924(j) sentence therefore can
run either concurrently with or consecutively to another sentence.
Pp. 456–464.

   (a) Sections 924(c) and 924(j) criminalize the use, carrying, and pos-
session of firearms in connection with certain crimes.   Subsection (c)
lays out a set of offenses and their corresponding penalties.   It also
mandates that a "term of imprisonment imposed on a person under this
subsection" must run consecutively with other sentences.   § 924(c)(1)
(D)(ii).   Subsection (j) likewise lays out offense elements and corre-
sponding penalties.   Unlike subsection (c), subsection (j) contains no
consecutive-sentence mandate.   Pp. 456–458.

(b) Subsection (c)'s consecutive-sentence mandate applies only to the terms of imprisonment prescribed within subsection (c). A sentence imposed under subsection (j) does not qualify. Subsection (j) is located outside subsection (c) and does not call for imposing any sentence from subsection (c). And while subsection (j) references subsection (c), that reference is limited to offense elements, not penalties. Pp. 458–459.

(c) Congress did not, as the Government maintains, incorporate § 924(c) as a whole into § 924(j) such that a § 924(j) defendant faces subsection (j)'s penalties *plus* subsection (c)'s penalties. Subsection (j) nowhere mentions—let alone incorporates—subsection (c)'s penalties. Moreover, as subsections (c) and (j) are written, a sentencing court cannot always obey both sets of penalties. To avert potential conflict between subsections (c) and (j), the Government points to another provision, § 924(c)(5), as a model. But assuming without deciding whether § 924(c)(5) operates as the Government says, Congress did not implement that design in subsection (j). Equally unavailing is the Government's argument that, under double jeopardy principles, a defendant cannot receive both subsection (c) and subsection (j) sentences for the same conduct. That view of double jeopardy can easily be squared with the conclusion that subsection (j) neither incorporates subsection (c)'s penalties nor triggers the consecutive-sentence mandate. Pp. 459–462.

(d) It is not "implausible," as the Government asserts, for Congress to have imposed the harsh consecutive-sentence mandate under subsection (c) but not subsection (j), which covers more serious offense conduct. That result is consistent with the statute's design. Unlike subsection (c), subsection (j) generally eschews mandatory penalties in favor of sentencing flexibility. Of a piece, subsection (j) permits flexibility to choose between concurrent and consecutive sentences. Congress chose a different approach to punishment in subsection (j) than in subsection (c), and the Court must implement the design Congress chose. Pp. 462–464.

*Vacated and remanded.*

JACKSON, J., delivered the opinion for a unanimous Court.

*Lawrence D. Rosenberg* argued the cause for petitioner. With him on the briefs were *Andrew J. M. Bentz, Charles E. T. Roberts,* and *Anne Marie Lofaso.*

*Erica L. Ross* argued the cause for the United States. With her on the brief were *Solicitor General Prelogar, As-*

*sistant Attorney General Polite,* and *Deputy Solicitor General Feigin.**

JUSTICE JACKSON delivered the opinion of the Court.

When a federal court imposes multiple prison sentences, it can typically choose whether to run the sentences concurrently or consecutively. See 18 U. S. C. §3584. An exception exists in subsection (c) of §924, which provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment." §924(c)(1)(D)(ii).

In this case, we consider whether §924(c)'s bar on concurrent sentences extends to a sentence imposed under a different subsection: §924(j). We hold that it does not. A sentence for a §924(j) conviction therefore can run either concurrently with or consecutively to another sentence.

I

In 2002, members of a drug-dealing group from the Bronx assassinated a rival drug dealer. The Government accused petitioner Efrain Lora of being one of the group's leaders and acting as a scout during the fatal shooting. After a jury trial, Lora was convicted of aiding and abetting a violation of §924(j)(1), which penalizes "[a] person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm," where "the killing is a murder." See also §2(a) (an aider and abettor is punishable "as a principal"). Lora was also convicted of conspiring to distribute drugs, in violation of 21 U. S. C. §§841 and 846.

At sentencing, the District Court rejected two of Lora's arguments about his §924(j) conviction. Most pertinent here, Lora argued that the District Court had discretion to

---

*Briefs of *amici curiae* urging reversal were filed for the American Bar Association by *Deborah Enix-Ross* and *Mary-Christine Sungaila*; and for the National Association of Criminal Defense Lawyers by *Bruce P. Merenstein* and *David M. Porter.*

run the §924(j) sentence concurrently with the drug-distribution-conspiracy sentence. The District Court held it lacked such discretion. Applying Circuit precedent, it held that §924(c)(1)(D)(ii)'s bar on concurrent sentences governs §924(j) sentences, such that Lora's two sentences had to run consecutively. See *United States* v. *Barrett*, 937 F. 3d 126, 129, n. 2 (CA2 2019). Lora also argued that a §924(j) conviction is not subject to the mandatory minimum sentences specified in §924(c). Disagreeing once again, the District Court applied the five-year mandatory minimum under §924(c)(1)(A) to Lora's sentencing calculation.

The District Court ultimately sentenced Lora to 30 years of imprisonment: 25 years on the drug-distribution-conspiracy count and—consecutively—five years on the §924(j) count. Lora also received five years of supervised release.

The Court of Appeals affirmed, adhering to its precedent barring §924(j) sentences from running concurrently with other sentences. That decision reinforced a conflict among the Courts of Appeals over whether §924(c)(1)(D)(ii)'s concurrent-sentence bar governs §924(j) sentences.[1] We granted certiorari to resolve the conflict. 598 U. S. —— (2022).

## II

### A

This case concerns federal laws that criminalize the use, carrying, and possession of firearms in connection with certain crimes. The relevant parts of that scheme are spread across two subsections of 18 U. S. C. §924.

---

[1] Compare, *e. g.*, *Barrett*, 937 F. 3d, at 129, n. 2 (§924(c)(1)(D)(ii)'s concurrent-sentence bar governs §924(j) sentences); *United States* v. *Berrios*, 676 F. 3d 118, 140–144 (CA3 2012); *United States* v. *Bran*, 776 F. 3d 276, 280–282 (CA4 2015); and *United States* v. *Dinwiddie*, 618 F. 3d 821, 837 (CA8 2010), with *United States* v. *Julian*, 633 F. 3d 1250, 1252–1257 (CA11 2011) (it does not).

Subsection (c) lays out a set of offenses and their corresponding penalties. It begins by making it a crime either to "us[e] or carr[y] a firearm" "during and in relation to any crime of violence or drug trafficking crime," or to "posses[s] a firearm" "in furtherance of any such crime." § 924(c)(1)(A). The provision then prescribes "a term of imprisonment" for that offense: a minimum of five years. § 924(c)(1)(A)(i).

Other (more serious) offense elements and "term[s] of imprisonment" follow within subsection (c). If the firearm is "brandished," the "term of imprisonment" jumps to a minimum of seven years. § 924(c)(1)(A)(ii). If the firearm is "discharged," the minimum becomes 10 years; if the firearm is a "machinegun," 30 years; and so on. §§ 924(c)(1)(A)–(C), (c)(5).

Subsection (c) also provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person." § 924(c)(1)(D)(ii). In other words, the sentence must run consecutively, not concurrently, in relation to other sentences. This concurrent-sentence bar (or consecutive-sentence mandate) is at issue in this case.

Subsection (j) was added decades after subsection (c) and its consecutive-sentence mandate.[2] Subsection (j) likewise lays out offense elements and corresponding penalties. It provides:

> "A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—
>
> "(1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life; and

---

[2] See 82 Stat. 1224 (enacting subsection (c) in 1968); 84 Stat. 1889–1890 (adding subsection (c)'s consecutive-sentence mandate in 1971); 108 Stat. 1973 (enacting subsection (j), originally designated as subsection (i), in 1994); 110 Stat. 3505 (redesignating as subsection (j) in 1996).

"(2) if the killing is manslaughter (as defined in section 1112), be punished as provided in that section." § 924(j).

Subsection (j) contains no consecutive-sentence mandate.

## B

Here, Lora was convicted of a subsection (j) offense. The parties dispute whether the sentence for that offense can run concurrently with another sentence, or whether it is subject to subsection (c)'s consecutive-sentence mandate. We hold the former.

Subsection (c)'s consecutive-sentence requirement applies to a "term of imprisonment imposed on a person *under this subsection*"—*i. e.*, subsection (c). § 924(c)(1)(D)(ii) (emphasis added). By those plain terms, Congress applied the consecutive-sentence mandate only to terms of imprisonment imposed under *that* subsection. And Congress put subsection (j) in a *different* subsection of the statute.

Drilling into the details confirms that straightforward reasoning. To begin, subsection (c) sets forth a host of offenses and the corresponding "term[s] of imprisonment" to be imposed. §§ 924(c)(1), (5); *supra*, at 457. Those are the "term[s] of imprisonment imposed . . . under this subsection" that the consecutive-sentence mandate references. § 924(c)(1)(D)(ii). That is, by echoing the phrase "term of imprisonment" and referring inwards to "this subsection," § 924(c)(1)(D)(ii) points to the terms of imprisonment prescribed within subsection (c).

A sentence imposed under subsection (j) does not qualify. To state the obvious again, subsection (j) is not located within subsection (c). Nor does subsection (j) call for imposing any sentence from subsection (c). Instead, subsection (j) provides its own set of penalties. See §§ 924(j)(1)–(2).

To be sure, subsection (j) *references* subsection (c). But it does so only with respect to offense elements, not penalties. Subsection (j)'s offense elements include causing death "in

the course of a violation of subsection (c)." §924(j). And to define that phrase, one must consult subsection (c)'s offense elements (*i. e.*, what it takes to violate that subsection). But that is where subsection (c)'s role in subsection (j) stops. One need not consult subsection (c)'s sentences in order to sentence a subsection (j) defendant.

Thus, a defendant who is sentenced under subsection (j) does not receive a "term of imprisonment imposed . . . under [subsection (c)]." Consequently, §924(c)(1)(D)(ii)'s consecutive-sentence mandate does not apply.

## III

### A

The Government tries to deflect this conclusion by blending subsections (c) and (j) together. It claims that "Congress incorporated Section 924(c) *as a whole* into Section 924(j)." Brief for United States 15. Under that view, a subsection (j) defendant faces subsection (j)'s penalties *plus* subsection (c)'s penalties—including subsection (c)'s mandatory minimum sentences and its consecutive-sentence mandate.

The actual statute bears no resemblance to the Government's vision. Subsection (j) nowhere mentions—let alone incorporates—subsection (c)'s penalties. Instead, as just explained, subsection (j)'s only reference to subsection (c) is limited to offense elements. *Supra*, at 458–459.

Moreover, a sentencing court cannot follow both subsection (c) and subsection (j) as written. Combining the two subsections would set them on a collision course; indeed, in some cases, the maximum sentence would be lower than the minimum sentence. Take voluntary manslaughter using a machinegun in the course of a subsection (c)(1) violation, for example. Subsection (c), because of the machinegun, would command that "the person shall be sentenced to a term of imprisonment of not less than 30 years." §924(c)(1)(B)(ii). Subsection (j), because of the voluntary manslaughter, would

command that, per §1112, the person "shall be . . . imprisoned not more than 15 years." §§924(j)(2), 1112(b). To fashion a sentence "not less than 30 years" and "not more than 15 years"—that is, to obey both subsections (c) and (j)—is impossible. And Congress has not required that unachievable result. Instead, subsection (j) supplies its own comprehensive set of penalties that apply instead of subsection (c)'s.

To avert potential conflict between subsections (c) and (j), the Government tries to knit the two provisions together in a very particular way. In the Government's view, a court sentencing a subsection (j) defendant should jump to subsection (c), apply the penalties listed there, then jump back to subsection (j) and add the penalties listed there, then jump back to subsection (c) and impose the consecutive-sentence mandate listed in that subsection. But nothing in subsection (j) calls for such calisthenics.

To assuage *that* concern, the Government maintains that Congress has done this elsewhere; it says that another provision, §924(c)(5), operates this way. Tr. of Oral Arg. 27, 31. Even if §924(c)(5) does work in that fashion—which we do not decide—the Government's argument only underscores that subsection (j) does not.

Under §924(c)(5), a person who, *inter alia*, uses armor piercing ammunition during and in relation to a crime of violence or drug trafficking crime:

> "shall . . .
>
> "(A) be sentenced to a term of imprisonment of not less than 15 years; *and*
>
> "(B) if death results from the use of such ammunition—
>
> "(i) if the killing is murder (as defined in section 1111), be punished by death or sentenced to a term of imprisonment for any term of years or for life; and
>
> "(ii) if the killing is manslaughter (as defined in section 1112), be punished as provided in section 1112." (Emphasis added.)

According to the Government, § 924(c)(5) adds two penalties together when death results: Someone convicted of murder resulting from the use of such ammunition faces a 15-year mandatory minimum sentence under § 924(c)(5)(A) *plus* an additional sentence for murder under § 924(c)(5)(B)(i). Tr. of Oral Arg. 27, 31.

But subsection (j) is cast from a different mold. Section 924(c)(5) groups the two penalties together and joins them with the word "and." In contrast, several unrelated subsections separate subsections (c) and (j) structurally, and nothing joins their penalties textually. So even if those features of § 924(c)(5) make it operate as the Government contends, those aspects of § 924(c)(5) are missing from subsection (j).

In the Government's own telling, then, § 924(c)(5) shows how Congress could have constructed penalties that might ultimately add together. Yet Congress did not implement that design in subsection (j).

Equally unavailing is the Government's invocation of double jeopardy principles. According to the Government's brief, "Section 924(j) amounts to the 'same offense' as Section 924(c) for purposes of the Double Jeopardy Clause," so "a defendant may be punished for *either* a Section 924(c) offense *or* a Section 924(j) offense, *but not both*." Brief for United States 22–26 (emphasis added; alterations and some internal quotation marks omitted). The Government argues that this conception of double jeopardy confirms subsection (j) incorporates all of subsection (c). *Ibid.*

We express no position on the Government's view of double jeopardy, because even assuming it, *arguendo*, the Government's view does not refute our holding on the question presented. The Government says someone cannot receive both subsection (c) and subsection (j) sentences for the same conduct. But that aligns with our conclusion here: If a defendant receives a sentence under subsection (j), he does *not* receive a sentence "imposed . . . under [subsection (c)]" that would trigger the consecutive-sentence mandate. § 924(c)(1)

(D)(ii).  Accordingly, the Government's view of double jeop-
ardy can easily be squared with our view that subsection (j)
neither incorporates subsection (c)'s penalties nor triggers
the consecutive-sentence mandate.

B

The Government protests that it is "implausible" that Con-
gress imposed the harsh consecutive-sentence mandate
under subsection (c) but not subsection (j), which covers
more serious offense conduct.   Brief for United States 9, 28–
35.   Yet that result is consistent with other design features
of the statute.

Congress plainly chose a different approach to punishment
in subsection (j) than in subsection (c).   Subsection (c), first
enacted in 1968, is full of *mandatory* penalties.   It contains
mandatory minimum years of imprisonment and mandatory
consecutive sentences.   In fact, when subsection (j) was
enacted in 1994, subsection (c) specified not just mandatory
minimums, but exact mandatory terms of imprisonment.   18
U. S. C. § 924(c)(1) (1994 ed.) (*e. g.*, exactly five years of im-
prisonment for the base subsection (c) offense).

Subsection (j), by contrast, generally eschews mandatory
penalties in favor of sentencing flexibility.   Unlike subsec-
tion (c), subsection (j) contains no mandatory minimums.
Even for murder, subsection (j) expressly permits a sentence
of "*any* term of years."   § 924(j)(1) (emphasis added).   This
follows the same pattern as several other provisions enacted
alongside subsection (j) in the Federal Death Penalty Act of
1994, 108 Stat. 1959.   In those provisions, as in § 924(j)(1),
Congress authorized the death penalty, but also a flexible
range of lesser sentences for "any term of years," with no
mandatory minimum or consecutive-sentence mandate.[3]   In
the same law, Congress also enacted a provision allowing

_____

[3] 108 Stat. 1971–1973, 1976, 1978–1982 (Pub. L. 103–322, §§ 60008, 60010,
60011, 60019–60024).

judges to go below the otherwise-mandatory minimum sentence in certain cases.[4]  Given those choices to favor sentencing flexibility over mandatory penalties, it is not "implausible," as the Government asserts, that subsection (j) permits flexibility to choose between concurrent and consecutive sentences.

Nor is that flexibility incompatible with the seriousness of subsection (j) offenses.  Subsection (j) merely reflects the seriousness of the offense using a different approach than subsection (c)'s mandatory penalties.  For murder, subsection (j) authorizes the harshest maximum penalty possible: death.  § 924(j)(1).  And for manslaughter, subsection (j) imposes the same harsh punishment that the Federal Criminal Code prescribes for other manslaughters.  See § 924(j)(2) (aligning penalties with § 1112).[5]

Congress could certainly have designed the penalty scheme at issue here differently.  It could have mandated harsher punishment under subsection (j) than under subsection (c).  It could have added a consecutive-sentence mandate to subsection (j).  It could have written subsection (c)'s consecutive-sentence mandate more broadly.  It could have placed subsection (j) within subsection (c).[6]

---

[4] *Id.*, at 1985–1986 (Pub. L. 103–322, § 80001) (enacting 18 U. S. C. § 3553(f)).

[5] When Congress enacted subsection (j), it actually imposed higher maximum penalties for manslaughter under subsection (j) than what subsection (c) had authorized for the base offense.  A base subsection (c) violation triggered a fixed five-year sentence, while subsection (j)(2) authorized more: up to 10 years for voluntary manslaughter and six years for involuntary manslaughter.  18 U. S. C. §§ 924(c)(1), (i)(2), 1112 (1994 ed.); see 110 Stat. 3505 (redesignating subsection (i) as subsection (j)).  This reinforces that Congress designed subsection (j)'s penalties to account for the seriousness of the offense by themselves, without incorporating penalties from subsection (c).

[6] Congress specifically considered and rejected that last possibility.  The 1994 Congress had before it a proposal to add, within subsection (c), a provision authorizing the death penalty when a subsection (c) violation

But Congress did not do any of these things. And we must implement the design Congress chose.

\*    \*    \*

Because the consecutive-sentence mandate in § 924(c)(1)(D)(ii) does not govern § 924(j) sentences, the District Court had discretion to impose Lora's § 924(j) sentence concurrently with another sentence. We vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

Page Proof Pending Publication

---

results in homicide. See 140 Cong. Rec. 11165, 24066. Congress rejected that option and enacted a different version of that crime bill—which created subsection (j).

## Reporter's Note

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports.  The revised pagination makes available the official United States Reports citation in advance of publication.  The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court.  A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus.  Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation.  The following additional edits were made:

None