# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1548
_____

United States of America

*Plaintiff - Appellee*

v.

Deoman Reeves

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: April 15, 2025
Filed: July 17, 2025
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

A jury convicted Deoman Reeves of eleven counts of narcotics- and firearms-related charges. The district court[1] sentenced him to a term of life imprisonment on

---

[1] The Honorable Matthew T. Schelp, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Shirley Padmore Mensah, Chief Magistrate Judge, United States District Court for the Eastern District of Missouri.

one count, a term of 120 months' imprisonment on seven counts to be served concurrently, and terms of 60 months' imprisonment on three counts to be served consecutively to each other and the rest of the counts. On appeal, Reeves challenges the district court's denial of several of his motions. Finding no reversible error, we affirm.

## I.  Background

On September 26, 2019, shots were fired as two individuals drove past Reeves's parked blue Dodge Durango in University City, Missouri. No one was injured. Local police identified Reeves as the primary suspect, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") was brought in to assist in the investigation. Investigators suspected that he participated in firearms trafficking with family members. They also connected Reeves to a narcotics trafficking organization involving co-defendants Franklin Bell and Arrion Jones. Investigators believed that Reeves had taken on a role as an "enforcer" within the organization, meaning that he was tasked with arming himself to protect the organization's members, territory, and profits; to intimidate customers and competitors; and to retaliate against rivals when necessary.

On October 20, 2019, Jones was shot in the arm by rival drug traffickers while inside his girlfriend's apartment. Deronte McDaniels, an acquaintance of Jones, returned fire using Jones's Glock pistol, leaving a shell casing at the scene. In the aftermath, Reeves, McDaniels, Bell, Jones, and Jones's father discussed retaliating against the rival drug traffickers. At one point, McDaniels gave Reeves the Glock pistol he had used during the shootout. Seeking to evade law enforcement, Reeves booked a room at the Red Roof Inn in Bridgeton, Missouri. Reeves, two children of his, their mother, Bell, and McDaniels spent the night there.

The next day, on October 21, 2019, Reeves, Bell, and McDaniels departed from the Red Roof Inn and reunited with Jones. They then drove together to University City in a Toyota RAV4, which Reeves had rented. While driving around

University City, McDaniels claimed to have spotted one of the rival drug traffickers from the previous day.  The RAV4 pulled over, and Reeves, Bell, and McDaniels exited the vehicle armed with firearms.  Jones, still recovering from his gunshot wound and wearing a sling on his arm, remained in the RAV4.  Bell and McDaniels broke off from Reeves.  Armed with the same Glock pistol used by McDaniels the day before, Reeves went through an alley by himself, where he spotted a nineteen-year-old bystander, David Anderson, in someone's backyard.  Thinking that Anderson was the rival drug trafficker whom he was targeting, Reeves shot him.  Anderson ultimately succumbed to his wounds.  Bell and McDaniels then approached the area where Reeves shot Anderson and began firing their weapons.  Soon after, the three of them returned to the RAV4 and fled.

Still under the impression that the victim was one of their rival drug traffickers, Reeves boasted in the RAV4 that he had killed the target. Later investigations matched a shell casing from the murder scene to a shell casing from the previous day's shooting in the apartment.  Investigators also collected eyewitness accounts of a male wearing all black running through an alley and then leaving in a silver or grey SUV.  These descriptions matched surveillance footage of Reeves from the Red Roof Inn and of the silver Toyota RAV4.

Following these events, ATF agents intensified their investigation.  They obtained precision location warrants on two of Reeves's cellphones, which they used to monitor his movements and activities.  They learned that Reeves, Bell, and Jones consistently possessed firearms while selling fentanyl.  They then sought to gather more evidence using confidential informants and undercover officers.  On November 4, 2019, ATF agents set up a controlled buy in which an informant, wired with video and audio recording devices, purchased $200 worth of fentanyl from Reeves, who was in Bell's car sitting on a pistol.  On November 14, an informant purchased $400 worth of fentanyl from Reeves, and then later that same day purchased a firearm from him for $450.  On November 19, an informant, in the presence of an undercover officer, purchased four grams of fentanyl and an "AR

-3-

pistol" for $1,050 total. Several other controlled buys of fentanyl involving Reeves's co-defendants occurred between November 2019 and January 2020.

On January 14, 2020, ATF agents arrested Reeves, Bell, and Jones. Reeves was charged with eleven counts: one count of conspiracy to distribute and possess with the intent to distribute fentanyl, *see* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi), and 846; four counts of possession with intent to distribute fentanyl, *see id.* § 841(a)(1) and (b)(1)(C); three counts of possession of a firearm in furtherance of a drug trafficking crime, *see* 18 U.S.C. § 924(c)(1)(A) and (c)(1)(A)(i); two counts of being a felon in possession of a firearm, *see id.* §§ 922(g)(1) and 924(a)(8); and one count of possession of a firearm in furtherance of a drug trafficking crime resulting in death, *see id.* § 924(c)(1)(A) and (j)(1).

Reeves filed various pretrial motions, including a motion to suppress location data obtained pursuant to the precision location warrants and a motion to sever the count charging him with possession of a firearm in furtherance of a drug trafficking crime resulting in death. Following an evidentiary hearing, the magistrate judge filed a report and recommendation recommending that the district court deny Reeves's motions. The district court adopted the report and recommendation over Reeves's objections.

During trial, Reeves objected to one of the Government's proposed jury instructions, and the instruction was ultimately withdrawn. He had multiple opportunities to object to each of the other jury instructions, but affirmatively declined to do so.

Following the close of the Government's evidence, and then again after the close of all evidence, Reeves moved for judgment of acquittal on the count charging him with possession of a firearm in furtherance of a drug trafficking crime resulting in death and on the three counts charging him with possession of a firearm in furtherance of a drug trafficking crime. The district court denied the motion both times. The jury ultimately returned guilty verdicts on all counts. Reeves then

-4-

renewed his motion for judgment of acquittal as to the count charging him with possession of a firearm in furtherance of a drug trafficking crime resulting in death and as to one of the counts charging him with possession of a firearm in furtherance of a drug trafficking crime. He also moved for a new trial, alleging that the district court erred in submitting two jury instructions to which he did not object during trial. The district court denied those motions as well. This appeal followed.

## II. Discussion

On appeal, Reeves challenges the district court's denial of (1) his motion to sever the count charging him with possession of a firearm in furtherance of a drug trafficking crime resulting in death, (2) his motion to suppress evidence obtained pursuant to the precision location warrants, (3) his motion for judgment of acquittal as to the count charging him with possession of a firearm in furtherance of a drug trafficking crime resulting in death and as to one of the counts charging him with possession of a firearm in furtherance of a drug trafficking crime, and (4) his motion for a new trial due to instructional error. We address each in turn.

### A. Motion to Sever

We begin with Reeves's pretrial motion to sever the count charging him with possession of a firearm in furtherance of a drug trafficking crime resulting in death, relating to his killing of Anderson on October 21, 2019 during an attempted retaliation against rival narcotics traffickers in University City. Reeves did not renew his motion at the close of the Government's case in chief or at the close of evidence. There "appears to be a split in authority on the appropriate standard of review when a defendant moves to sever the counts during a pretrial hearing, but fails to renew the motion at the close of the government's case in chief or at the close of the evidence." *United States v. Goodhouse*, 81 F.4th 786, 791 n.3 (8th Cir. 2023). The appropriate standard of review is either plain error or abuse of discretion. *Id.* Here, we need not choose between the two as reversal is not justified under either standard.

"When a defendant moves for severance, a district court must first determine whether joinder is proper under Federal Rule of Criminal Procedure 8." *United States v. Ruiz*, 412 F.3d 871, 886 (8th Cir. 2005). Under Rule 8, joinder of offenses is appropriate "if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). However, "[e]ven if joinder is proper under that rule, the court still has discretion to sever under Rule 14." *Ruiz*, 412 F.3d at 886. Rule 14 allows the court to "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" if joinder under Rule 8 "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). When weighing these considerations, "[t]he rules are to be liberally construed in favor of joinder." *United States v. Robinson*, 781 F.3d 453, 460 (8th Cir. 2015).

Joinder of this count was proper under Rule 8. The offenses were "of the same or similar character" as the other ten counts, each connected to the same drug trafficking conspiracy. *See* Fed. R. Crim. P. 8(a). The ATF began investigating Reeves following a different shooting in University City a few weeks prior to the killing of Anderson on October 21. Investigators connected Reeves to drugs and firearms trafficking organizations. Reeves sought to retaliate against a rival drug trafficking organization and shot Anderson under the mistaken impression that he was a member of that rival organization. All the offenses in the indictment, including the controlled buys of narcotics and firearms, took place in the short time span between October 2019 and January 2020. Liberally construing the rules in favor of joinder, the shooting of Anderson was "connected with" the rest of the charged conduct. *See* Fed. R. Crim. P. 8(a).

Reeves points to no substantial prejudice justifying severing under Rule 14. He argues that he was prejudiced by the evidence of his firearms and narcotics trafficking that took place in the weeks following the killing of Anderson. However, "[a] defendant cannot show prejudice when evidence of the joined offense would be properly admissible in a separate trial for the other crime," *United States v. Reynolds*,

720 F.3d 665, 670 (8th Cir. 2013), and the evidence of Reeves's firearms and narcotics trafficking would have been admissible in a standalone trial for possession of a firearm in furtherance of a drug trafficking crime resulting in Anderson's death. Federal Rule of Evidence 404(b) permits the admission of evidence of subsequent bad acts offered for non-propensity purposes if the evidence is relevant to a material issue, the evidence is similar in kind and close in time to the crime charged, the evidence is proven by a preponderance of the evidence, and the potential prejudice does not substantially outweigh its probative value. *United States v. Grady*, 88 F.4th 1246, 1258 (8th Cir. 2023). Evidence of Reeves's firearms and narcotics trafficking in the weeks following the murder of Anderson—a murder which Reeves committed in (attempted) retaliation against rival traffickers—meets each of those criteria. Therefore, such evidence would have been admissible in a separate trial. Reeves thus suffered no prejudice. Because joinder was appropriate under Rule 8 and Reeves cannot demonstrate a risk of substantial prejudice justifying severance under Rule 14, the district court neither abused its discretion nor plainly erred in denying Reeves's motion to sever the count charging him with possession of a firearm in furtherance of a drug trafficking crime resulting in death.

### B. Motion to Suppress

We now address Reeves's pretrial motion to suppress evidence obtained pursuant to precision location warrants on his two cell phones. "We review the denial of a suppression motion under a clear error analysis for findings of fact and the court's legal conclusions *de novo*." *United States v. Reed*, 25 F.4th 567, 569 (8th Cir. 2022). "The Warrant Clause of the Fourth Amendment requires that warrants (1) be issued by a neutral and detached magistrate, (2) contain a 'particular[ ] descri[ption of] the place to be searched, and the persons or things to be seized,' and (3) be based 'upon probable cause, supported by Oath or affirmation.'" *United States v. Skarda*, 845 F.3d 370, 375 (8th Cir. 2016) (alterations in original). "The existence of probable cause depends on whether, under the totality of the circumstances, there is a fair probability evidence of a crime will be found in a particular place." *Reed*, 25 F.4th at 569 (internal quotation marks omitted). This

court gives "great deference to the issuing magistrate judge's decision regarding the existence of probable cause in an affidavit." *Id*.

Reeves asserts that the warrants were not supported by probable cause. The record suggests otherwise. The ATF agent who submitted the warrant request and affidavit included the following evidence: on September 26, 2019, two individuals were shot at while driving past Reeves's parked blue Dodge Durango, one of whom returned fire; on September 27, 2019, Reeves called University City police, using one of his cell phones, to obtain information about the shooting; on September 30, 2019, Reeves's cousin was stopped by St. Louis police officers while driving the blue Dodge Durango, which had bullet holes in the interior and exterior, and police found a pistol in the car; and investigators confirmed that Reeves used the two phones. The affidavit also explained that Reeves actively used the target phones during the commission of his crimes and that the searches would likely lead to evidence of the crimes. Taken together, there was enough information to support a finding that there existed "a fair probability [that] evidence of a crime will be found" through a search of the precision location data of both of Reeves's phones. *See id.*

Reeves argues that the warrants were not sufficiently particular. *See Skarda*, 845 F.3d at 375. His argument is unavailing. The warrants each included attachments that specified the phone numbers for which certain records—including precision location data, cell site information, pen registers, and trap and trace devices related to both numbers—were requested.

Finally, Reeves contends that the Government's warrant returns insufficiently catalogued the inventory seized, in violation of Federal Rule of Criminal Procedure 41(f)(1). As a result, he claims, he was prejudiced because he was left with no way of determining whether the searches exceeded the scopes of the warrants. We disagree. An officer executing a search and seizure warrant "must prepare and verify an inventory of any property seized." Fed. R. Crim. P. 41(f)(1)(B). A review of the warrant returns plainly demonstrates that the officers complied with this requirement: both returns list as the inventory seized "precision location

information," beginning on exact dates and times, for the respective cell number. The warrant returns satisfied Rule 41(f)(1), having provided Reeves with sufficient information to determine whether the searches exceeded the scopes of the warrants. We conclude that the district court neither clearly erred in its factual findings nor erred in its legal conclusions in denying Reeves's motion to suppress.

## C. Motion for Judgment of Acquittal

Having addressed Reeves's pretrial motions, we now turn to his motion for judgment of acquittal on two of the eleven counts. "We review *de novo* a district court's denial of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor." *United States v. Cardwell*, 71 F.4th 1122, 1131 (8th Cir. 2023). "The verdict will be upheld if there is any interpretation of the evidence that could lead a reasonable jury to convict." *Id*.

We first address the count charging Reeves with possession of a firearm in furtherance of a drug trafficking crime resulting in death, *see* 18 U.S.C. § 924(c)(1)(A) and (j)(1), relating to his killing of David Anderson on October 21, 2019. To establish a violation of § 924(c) for possession of a firearm in furtherance of a drug trafficking conspiracy, the Government must prove that (1) the defendant possessed a firearm and (2) the "possession had the effect of furthering, advancing or helping forward the drug crime." *United States v. Vang*, 3 F.4th 1064, 1067 (8th Cir. 2021). To establish a violation of § 924(j), the Government must show that, while in the course of violating § 924(c), "(1) the firearm was used to cause the death of the victim and that (2) the killing [wa]s a murder as defined by 18 U.S.C. § 1111." *United States v. Dinwiddie*, 618 F.3d 821, 833 (8th Cir. 2010) (alteration in original), *abrogated on other grounds by Lora v. United States*, 599 U.S. 453 (2023). Section 1111 defines "murder" as "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111. "Malice aforethought may be demonstrated objectively by reckless and wanton conduct, deviating grossly from the standard of care, of such a nature that a jury would be warranted in inferring the defendant's

-9-

awareness of a serious risk of death or serious bodily harm." *Dinwiddie*, 618 F.3d at 834.

The first element of § 924(c) is satisfied because Reeves possessed a firearm. The Government's evidence included, *inter alia*, testimony that McDaniels gave Reeves the handgun he used during the shootout at Jones's girlfriend's apartment the day prior, corroborated by ballistic evidence which showed that a shell casing from inside the apartment matched one from the murder scene. But Reeves argues that the second element of § 924(c) is not met, pointing out that neither he nor his co-defendants "possessed any drugs, much less possess[ed] drugs with the intent to distribute them" at the time that Anderson was shot and killed. Therefore, he argues, Anderson's death did not further a drug trafficking crime.

We disagree. The "in furtherance of" requirement is met because Reeves's possession of the firearm "further[ed], advance[ed] or help[ed] forward" his drug crimes. *See Vang*, 3 F.4th at 1067. We have noted that "[f]irearms are used in various aspects of drug trafficking schemes," such as by "intimidat[ing] drug customers, distributors and competitors." *United States v. Flax*, 988 F.3d 1068, 1074 (8th Cir. 2021) (alteration in original). Accordingly, when a drug trafficker uses a firearm while seeking to eliminate rival traffickers, the use of the firearm is in furtherance of the drug trafficking crime. *See id*. at 1075; *Vang*, 3 F.4th at 1067.

Such is the case here. During trial, the Government called a former Drug Enforcement Administration ("DEA") officer as an expert witness. He testified that Reeves used firearms to further his drug trafficking activities. He explained that retaliation against rival drug traffickers is necessary to protect an organization's turf and reputation, and thus furthers that organization's drug trafficking activities. The jury heard considerable evidence that Reeves and his co-defendants sought to retaliate against rival drug traffickers when they traveled to University City on October 21, 2019 and that Reeves thought he was retaliating against those rival drug traffickers when he shot and killed Anderson. Viewing the evidence in the light most favorable to the verdict, both elements of § 924(c) were satisfied.

-10-

Regarding § 924(j), the Government presented sufficient evidence that, while in the course of the aforementioned drug trafficking crime, Reeves used his firearm to shoot Anderson, killing him with malice aforethought. *See Dinwiddie*, 618 F.3d at 833-34. Reeves's premeditated decision to retaliate against rival traffickers and later boasting to his co-defendants that he had killed their target permitted the jury to infer that he was "aware of a serious risk of death or serious bodily harm." *See id.* at 334. All elements of the count having been met, a reasonable jury could convict Reeves of possession of a firearm in furtherance of a drug trafficking crime resulting in death. We decline to disturb this conviction.

We now turn to the count charging Reeves with possession of a firearm in furtherance of a drug trafficking crime, *see* 18 U.S.C. § 924(c)(1)(A), relating to the controlled buy of fentanyl on November 14, 2019. A confidential informant, wearing a video and audio recording device, purchased $400 of fentanyl from Reeves. During the transaction, the informant expressed interest in purchasing a firearm. Later that day, Reeves texted the informant a picture of a Ruger .40 caliber semi-automatic pistol, which he later sold to the informant for $450.

Reeves argues that the Government failed to prove beyond a reasonable doubt that he knowingly possessed a firearm during the controlled buy of fentanyl. He points out that the charged conduct for this count only involved the fentanyl transaction, not the later firearms transaction. Furthermore, video evidence of the fentanyl transaction did not show the presence of a firearm, nor did anyone testify to the presence of a firearm during the transaction.

A reasonable jury could nevertheless convict Reeves of this count. The absence of video evidence of the firearm during the November 14 fentanyl transaction is not fatal. The Government presented considerable circumstantial evidence that a firearm was present during the transaction. *See United States v. Lemoine*, 104 F.4th 679, 684 (8th Cir. 2024) (emphasizing that "courts must treat circumstantial evidence no differently than direct evidence" and that "a jury may convict based on circumstantial evidence"). Jones testified that, when selling

fentanyl, he would sometimes arm himself and Reeves would sometimes arm himself. Reeves was captured on video sitting on a firearm during the November 4 controlled buy, and Bell kept a firearm on his lap during a controlled buy on November 19, at which Reeves was present. During the November 14 fentanyl transaction, the informant sought to purchase a firearm from Reeves and purchased one later that very day. After Reeves's arrest, the ATF recovered multiple firearms and ammunition in his residence and a fully-loaded magazine in Reeves's blue Dodge Durango from which he conducted the November 14 controlled buy. An ATF agent testified that drug dealers commonly use guns to protect themselves, and the ex-DEA expert witness testified that dealers use guns for intimidation, retaliation, and protection of their organization's members, territory, and profits. Based on this cumulation of evidence and drawing all reasonable inferences in favor of the jury's verdict, a reasonable jury could convict Reeves of possession of a firearm in furtherance of a drug trafficking crime on November 14, 2019. Here, too, we decline to disturb the jury's verdict.

### D. Motion for a New Trial

Lastly, we address the district court's denial of Reeves's motion for a new trial, in which he alleged error in two jury instructions. When the record reflects that the parties and the district court carefully considered the jury instructions, the failure to object to a particular instruction at trial constitutes waiver of any challenge to that instruction on appeal. *United States v. Booker*, 576 F.3d 506, 511 (8th Cir. 2009); *Watkins v. Lawrence Cnty.*, 102 F.4th 933, 942 (8th Cir. 2024) (interpreting *Booker* to hold that "'a clear case of waiver' [exists] when a party challenging a jury instruction on appeal told the district court that it had no objection to the court's proposed instruction"). The record reflects that the parties and the district court carefully considered the jury instructions and that Reeves declined to object to the ones he now challenges on appeal. At the outset of the instruction conference, the district court noted that the parties had conducted "discussions about various instructions" that were in dispute. The district court then went through each instruction one by one, asking if Reeves had any objections. Reeves objected to one

instruction, which the Government subsequently withdrew.  He declined to object to either of the instructions which he now claims were erroneous.  After reviewing the final instruction, the district court asked once again if Reeves had any further objections to the instructions, and Reeves confirmed that he did not.  Because Reeves did not object to the instructions which he now challenges, he waived his challenges. We thus decline to reach the merits.

## III.  Conclusion

The judgment of the district court is affirmed.

_____